UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:16-cv-00144-MOC-DSC

| | | |
|---|---|---|
| **TD BANK, N.A.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **BILTMORE INVESTMENTS, LTD,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on plaintiff's Motion to Dismiss defendant's counter-claim (#10) and plaintiff's Motion for Judgment on the Pleadings (#16). Having considered the motions and reviewed the pleadings, the court enters the following Order.

1. **Background**

This action arises out of bankruptcy. In April 2005, plaintiff bank, known then as "Carolina First Bank," received a Promissory Note which was executed and delivered by defendant in the amount of $800,000. This Note was secured by real property and improvements. A second Promissory Note was issued in the amount of $125,000 in September 2005. This second Note was secured by an interest in three manufactured homes.

In January 2011, defendant Biltmore Investments, Ltd. ("Biltmore") filed for Chapter 11 Bankruptcy in this District. After a contested hearing, the bankruptcy court issued a Confirmation Plan and Confirmation Order. (ECF #1-G). The Second Amended Plan with amendments noted in relevant part:

> **CLASS 2. IMPAIRED SECURED CLAIM OF TD BANK, N.A.** in the amount of $916,981.11 as of January 23, 2013 secured by a first and third mortgage on

> Bear Wallow Mobile Home Park, located in Hendersonville, N. C. The allowed secured claim, will be amortized over 20 years at 6% interest, with a balloon payment due sixty-six (66) months from the effective date of the Plan. Monthly payments in the amount of $6,206.76 are contemplated to begin the first full month after the effective date of the Plan and then on the 20th day of each subsequent month. The balloon payment will be funded by refinance of all obligations.

(ECF #1-G) at 3 (emphasis in original). Subsequently, the bankruptcy court entered an Enforcement Order and an Amended Order in 2015 that noted, *inter alia*, "The Court finds that the Debtor [Biltmore] has failed to comply with the terms of its confirmed Plan." (ECF #1-H) at 3. The court's colleagues in the bankruptcy court went on to detail at length how Biltmore failed to comply with the terms of its Confirmed Plan and the court's Enforcement Order. See (ECF #1-H) at 4. In the event of noncompliance with the bankruptcy court's Order, the bankruptcy court decreed:

> If Biltmore Investments, Ltd. fails to comply with this Order, it will constitute an event of default under the Confirmed Plan and all creditors will be immediately entitled to pursue their normal legal non-bankruptcy remedies – including foreclosure of their collateral – without further notice to Biltmore or further proceedings in this Court.

(ECF #1-H) at 11. The plaintiff contends that the required payments were not made, sending defendant into default. See (ECF #1) ¶ 41.

After some time, there was a public foreclosure sale on February 29, 2016. The highest bidder purchased the property with his highest and last bid amounting to $625,000. On that day, the total indebtedness exceeded the amount of the foreclosure purchase, resulting in a deficiency of over $178,842.

Plaintiff has brought two primary claims and an ancillary claim for attorney's fees. First, plaintiff asks for the amount of the deficiency between the foreclosure purchase price and the

amount of indebtedness in addition to statutory interest. Pl. Complaint 2 (ECF #1). Second, the plaintiff requests possession of the collateral—the trailers—as a result of the default. Pl. Complaint 7 (ECF #1).

In response, the defendant has lodged a counter-claim under "the North Carolina Unfair Trade and Practices Act." [sic] Def. Answer 6 (ECF #9). Plaintiff has lodged a Motion to Dismiss defendant's counter-claim (#10) and a Motion for Judgment on the Pleadings (#16). These Motions have been fully briefed and are ripe for judicial review here.

### 2. Applicable Standard

A Motion to Dismiss under 12(b)(6) and a Motion for Judgment on the Pleadings are reviewed under largely similar standards of review. The standard for a Judgment on the Pleadings, also known as a 12(c) motion, has a key difference from a 12(b)(6) motion. In a 12(c) motion, "the court is to consider the answer as well as the complaint." Continental Cleaning Serv. V. United Parcel Serv., Inc., 1999 WL 1939249, at *1 (M.D.N.C. April 13, 1999) (internal citations omitted). In resolving a motion for judgment on the pleadings, the court may rely on admitted facts in the pleadings, documents attached to the pleadings, and facts contained in materials of which the court may take judicial notice. Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004) (noting that the Court should consider documents attached to the pleadings); Hebert Abstract Co. v. Touchstone Prop., Ltd., 914 F.2d 74, 76 (5th Cir. 1990) (holding that court should consider pleadings and judicially noticed facts).

### a. 12(b)(6) Standard

In determining whether a claim can survive a motion under Rule 12(b)(6), the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) that the "no set of facts"

standard only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id. at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 561 (alteration in original).

Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a claimant must allege facts in his complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a claimant must plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id. at 570 (emphasis added).

Post-Twombly, the Court revisited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. at 678. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability ...." Id. While the court accepts plausible factual allegations made in a claim as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts. Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id. at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

However, to survive a motion to dismiss, a plaintiff need not demonstrate that his right to relief is probable or that alternative explanations are less likely; rather, he must merely advance his claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. If his explanation is plausible, his complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation.

### b. Applicable Standard – Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In

resolving a motion for judgment on the pleadings, the court must accept all of the non-movant's factual averments as true and draw all reasonable inferences in its favor. Bradley v. Ramsey, 329 F. Supp. 2d at 622; Atwater v. Nortel Networks, Inc., 394 F. Supp. 2d 730, 731 (M.D.N.C. 2005). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Bradley, 329 F. Supp. 2d at 622.

### 3. Discussion

#### a. Claims & Counter-Claim

There are three primary allegations properly before the court. First, plaintiff has lodged a claim for the amount of the deficiency between the foreclosure purchase price and the amount of indebtedness in addition to statutory interest. Pl. Complaint 2 (ECF #1). Second, the plaintiff requests possession of collateral. Finally, the defendant has entered a counter-claim for a violation of state law. These claims are discussed *seriatim* below.

#### b. Deficiency & Possession of Collateral

The plaintiff has brought a collection action before the court. Defendant filed for bankruptcy and that the matter was brought before the bankruptcy court. That court ordered that plaintiff could pursue "non-bankruptcy remedies" including foreclosure in the case that defendant did not comply with its Confirmed Plan and related orders. (ECF #1-H) at 11.

Plaintiff argues that the defendant had defaulted and as a result of the default a foreclosure action was brought against the defendant. Pl. Motion for Judgment on the Pleadings 5 (ECF #17). The Henderson County Clerk of Court issued a foreclosure order on December 3, 2015. (ECF #17-A). The order was not appealed and became final after ten days. See Phil Mechanical Const. Co. v. Hillier, 72 N.C. App. 318, 325 (1985). Pursuant to state law, a public foreclosure sale was held.

The highest bidder paid less than what was owed to the creditor. The creditor has brought a deficiency action for the remainder. As of the date of the public foreclosure sale, the deficiency amounted to $178,842.43. The Note was secured by collateral, including three manufactured homes. Pl. Complaint ¶ 16 (ECF #1). It was perfected. See (ECF #1-E).

The defendant claims that it did "not default and is not liable for the deficiency balance." Def. Resp. 6 (ECF #24). That issue has been previously settled. The Henderson County Clerk of Court found the defendant in default. (ECF #17-A) ("The Note is now in default."). The order was not appealed and has become final. Barrett v. Shapiro & Ingle, L.L.P., No. 3:13-cv-550, 2014 WL 184415 at *4 (W.D.N.C. Jan. 15, 2014) ("The issues decided by the Clerk are therefore res judicata and neither the holder of the note nor the validity of the debt can be relitigated in this action."). The defendant cannot now assert that it is not in default.

Defendant has put forward four affirmative defenses, which include allegations of contributory negligence, violation of the implied covenant of good faith, impossibility of performance, and failure to mitigate damages. Def. Answer 3-6 (ECF #9). Each of the defendant's affirmative defenses fail as a matter of law.

The defendant's allegation of contributory negligence fails on its face. No claims have been made regarding negligence. The affirmative defense has no weight here and is inapplicable.

Defendant's failure to mitigate claim fails as a matter of law. Citing a case about seat belts, defendant claims that plaintiff had a duty "not to end the sale impulsively." Pl. Resp. to Def. Motion for Judgment on the Pleadings 7 (ECF # 24). Plaintiff could not end the sale. Pursuant to state law, the sale was handled by a trustee. See N.C. Gen. Stat. Chapter 45. Plaintiff could not end the sale, "impulsively" or not, as the trustee ran the proceeding.

Defendant also claims that it did not pursue its right to sue until the expiration of the upset-bid period because it "relied on a verbal agreement made with TD Bank that it…would not seek a deficiency from Biltmore Investments." Pl. Resp. to Def. Motion for Judgment on the Pleadings 9 (ECF # 24). As discussed in more detail in Part 3(c) below, the defendant has put forward insufficient information to prove the existence let alone the validity of this oral agreement.

Defendant also puts forward a stand-alone defense of the implied duty of good faith and fair dealing. Def. Answer 5 (ECF #9). The defendant cannot do so. It is the third affirmative defense in the defendant's answer. The defendant later claimed that the breach of the implied duty was not plead as a stand-alone defense but instead "had various other defenses in addition to good faith and fair dealing." Pl. Resp. to Def. Motion for Judgment on the Pleadings 12 (ECF # 24). That is false from the plain language of the answer: the fact that it is the third affirmative defense in a series of four affirmative defenses demonstrates that it was a stand-alone defense. The court finds highly persuasive the plaintiff's argument that a breach of the implied duty of good faith and fair dealing cannot present a stand-alone affirmative defense. Pl. Motion for Judgment on the Pleadings 9 (ECF #17).

Plaintiff pursued legal remedies in the bankruptcy court. See (ECF #17-B, #17-C). The defendant defaulted and a foreclosure action was initiated. The amount of the public foreclosure sale was less than what was owed. Plaintiff is owed the amount of the deficiency, which at the time of sale was $178,842.43. Accordingly, the plaintiff's Motion for Judgment on the Pleadings is granted. Plaintiff is owed the amount of deficiency in addition to statutory interest as well as possession of the collateral in the three manufactured homes. The plaintiff's ancillary demand for attorney's fees is subject to further judicial proceeding, motions, and review.

### c. Defendant's Counter-Claim

Defendant's counter-claim alleges a violation of North Carolina state law, specifically the Unfair and Deceptive Trade Practices Act. The state law declares unlawful any unfair methods of competition in or affecting commerce as well as any unfair or deceptive acts or practices affecting commerce. N.C. Gen. Stat. § 75-1.1. Defendant alleges that it has suffered damages as a result of the alleged violation of the Act. Def. Answer 6 (ECF #9).

Defendant's counter-claim lodges two primary allegations. First, that TD Bank failed to mitigate damages. Def. Resp. to Pl. Motion to Dismiss 10 (ECF #23). Specifically, defendant "had a duty to not end the sale impulsively." Id. Second, that there was a supposed verbal contract in which TD Bank agreed not to pursue a deficiency action. Id. Defendant has also made additional affirmative defense claims as well as a claim regarding *res judicata*.

To survive a Motion to Dismiss under Rule 12(b)(6), a claim must plead sufficient facts as to allow a court to "infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. The court is limited in its 12(b)(6) review to the pleadings and incorporated orders and exhibits.

The counter-claim here consists of three paragraphs. The two operative paragraphs claim that the plaintiff violated the statute, its actions affect commerce, the actions were unfair and deceptive, and defendant suffered damages as a result of the alleged violations.[1] The allegations fall far short of the standard of Iqbal and Twombly. Instead of pleading facts with particularity, the defendant's counter-claim is full of conclusions rather than facts. The pleadings and incorporated material has not crossed the line from conceivability to plausibility and fails under

---

1 Notably, the defendant's later argument about good faith and fair dealing (¶ 18) was not incorporated into its counter-claim. Def. Answer 6 (ECF #9).

the Rule 12(b)(6) standard.

Even if the court were to look beyond the pleadings for additional arguments, Defendant's counter-claim is invalid on its face. In support of its proposal, defendant writes:

> Furthermore, in TD Bank's Memorandum of Law for Judgment on the Pleadings, TD Bank admits in its memorandum of law for judgment on the pleadings that the law "only requires the Trustee to sell the property to the highest bidder." By ending the sale after only a single bid, how could they have known who the highest bidder would be? They in fact could not, and therefore are in violation of Chapter 45. Biltmore has knowledge of higher bid amount that the Stefanou's were willing to pay in the amount of $700,000.00. Therefore, Biltmore alleges that TD Bank's conduct at the sale is an affirmative defense to its claim for relief as they did not sell to the highest bidder, because they did not allow for the opportunity of anyone to make a higher bid at the foreclosure sale, it also claims this action as evidence of TD Bank's failure to meet its duty to mitigate its damages or avoid the consequences as required by Court precedent.

Def. Resp. to Pl. Motion to Dismiss 13 (ECF #23). The errors of law and logic are numerous here. TD Bank could not "end the sale." The power-of-sale foreclosure proceeding was handled by a trustee under state foreclosure law. See N.C. Gen. Stat. § 45-21.16, et seq. If there was one bid, that bidder would be the highest bidder. It is irrelevant that the bidder was willing to pay more for the item. Another bidder at the public foreclosure sale could have placed a bid, but no individual did so. Under state law, TD Bank simply did not have the legal duty that defendant wants them to have. TD Bank was under no obligation to generate higher bids.

Defendant also alleges that it relied upon a verbal agreement that TD Bank would not pursue a deficiency action. Other than the statement that such an agreement exists, defendant has pled insufficient facts related to who the agreement was made, who at TD Bank made the agreement, and where it occurred. There is simply no documentation to verify this supposed contract.

The burden is on the defendant, as the party seeking to enforce the contract, to prove all

the elements of a valid contract, including offer, acceptance, and consideration. See, e.g., Snyder v. Freeman, 300 N.C. 204 (1980). Here, the defendant has failed to prove sufficient facts to demonstrate that such a contract even existed let alone become a valid and binding agreement.

As for the remainder of defendant's arguments, they are barred by *res judicata*. This doctrine has three requirements: (1) a final judgment on the merits in a prior action, (2) identity of the cause of action in the earlier and later suit, and (3) identity of parties or their privies in prior suits. Pueschel v. United States, 369 F.3d 345, 354-55 (4th Cir. 2004). Here, TD Bank was the largest creditor in the bankruptcy action. The Bankruptcy Court and the Fourth Circuit have reviewed this case, between the same parties with the same nucleus of operative fact. See Biltmore Investments, Ltd. V. TD Bank, N.A., 626 Fed. App'x 390 (4th Cir. 2015); Amended Order (ECF #11-A; #11-B). The same core of operative facts underlie these prior actions—arising out of the bankruptcy—and as such bar the claims here again. See Walls v. Wells Fargo, N.A., 557 Fed. App'x. 231, 233 (4th Cir. 2014). Additionally, the Henderson County Clerk of Court issued a foreclosure order. (ECF #17-A). It bars re-litigation here that defendant did not default.

Here, the defendant's largest creditor was seeking to enforce its rights after the bankruptcy and default. It brought a foreclosure action. Via a trustee, a foreclosure sale was held. The highest bidder bought the property for less than was owed. The largest creditor now brings an action for the deficiency. This is not an unfair or deceptive trade practice—it is the law. See N.C. Gen. Stat. Chapter 45.

Defendant's counter-claim fails for several reasons. Primarily, it has not plead sufficient facts with particularity to survive the Rule 12(b)(6) Motion to Dismiss. Accordingly, it will be dismissed.

### 4. Conclusion

This is a collection action. The plaintiff has put forward two arguments resulting from the defendant's bankruptcy and the resulting default, including the deficiency amount and possession of the collateral. Defendant has lodged a counter-claim that does not meet the standard of <u>Iqbal</u> and <u>Twombly</u> and must be dismissed. Plaintiff's demand for attorney's fees is subject to further proceedings and review.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

- Plaintiff's Motion to Dismiss defendant's counter-claim (#10) is **GRANTED**;
- Defendant's counter-claim (#9) is **DISMISSED;**
- Plaintiff's Motion for Judgment on the Pleadings (#16) is **GRANTED;**
- Defendant is ordered to deliver to plaintiff the three manufactured homes named as collateral in plaintiff's Complaint (#1);
- Defendant is ordered to pay plaintiff the amount of deficiency as well as any applicable statutory interest**;** and
- The Clerk of Court is instructed to reflect such in a Judgment.

Signed: October 13, 2016





Max O. Cogburn Jr.
United States District Judge